Filed 7/31/26  In re A.R. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re A.R., a Person Coming Under the Juvenile Court Law. | |
| HUMBOLDT COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>J.K.,<br><br>        Defendant and Appellant. | A175376<br><br>(Humboldt County Super. Ct. No. JV2500120) |

In this dependency case, J.K. (Mother), mother of four-year-old A.R., appeals the denial of her request to strike an expert's report concerning her psychological evaluation and the expert's curriculum vitae from the juvenile case file.  Mother argues, for the first time on appeal, that the juvenile court should have exercised its inherent authority to grant her request.  We affirm.

1

# BACKGROUND[1]

On September 2, 2025, the Humboldt County Department of Health and Human Services (Department) filed a dependency petition on behalf of then three-year-old A.R., alleging she was at substantial risk of suffering serious physical harm or illness while in Mother's care. (Welf. & Inst. Code, § 300, subd. (b)(1).)[2]  The petition alleged that Mother had two other children, both of whom had died by suffocation while sleeping next to Mother in two separate incidents, the first in June 2024, and the second on August 23, 2025. The deaths were under investigation by law enforcement in Brookings, Oregon.

According to the detention report, the deaths of the two children occurred in Oregon.  In connection with those deaths, the Brookings Police Department was considering filing charges against Mother, then living in Eureka, California.  Mother's grandparents expressed concerns about Mother's instability.  Mother reported she suffered from PTSD, depression, and anxiety.  Due to concerns about Mother's ability to safely care for A.R., the Department placed A.R. in protective custody.

A.R.'s alleged father, P.B. (Father), lived in Oregon and had not seen A.R. for several months.  A.R. had lived with him primarily for some period prior, but when he had dropped off A.R. with Mother on February 28, 2025, Mother blocked contact with him and denied him access to A.R.

At the detention hearing on September 3, 2025, the juvenile court elevated Father to presumed father status, ordered A.R. detained, and

---

[1]     Given the narrow issue raised on appeal, we need only provide an abbreviated summary of the facts and proceedings below.

[2]     Undesignated statutory references that follow are to the Welfare and Institutions Code.

granted both parents supervised visitation.

On September 23, the Department filed an amended petition, adding allegations that A.R. came within the meaning of section 300, subdivision (j) based on Mother causing the death of two other children through abuse or neglect. On October 29, the court sustained the allegations of the amended petition and set a dispositional hearing for November 20.

The court granted the Department's request to continue the dispositional hearing to allow Mother to undergo a psychological evaluation. The court ultimately continued the dispositional hearing to January 12, 2026.

Prior to the hearing, the Department submitted its disposition report. It recommended that the court place A.R. with Father as the nonoffending, noncustodial parent (§ 361.2),[3] grant Father sole physical custody of A.R., grant both parents joint legal custody, and terminate jurisdiction.

In the report, the Department noted that A.R. was observed to be comfortable with Father during visits and that they "appear[ed] to have a positive and loving relationship." Father had made arrangements to move to Texas to live with parents after losing his job in Oregon. He expressed he wanted A.R. to live with him in Texas and for him to continue receiving

---

[3]     Section 361.2, subdivision (a) provides in part that when a court orders removal of a child pursuant to section 361, "the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).) " '[I]n a few decisions, reviewing courts have used the phrase "nonoffending noncustodial parent" as shorthand for "a parent . . . with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300." ' [Citations.]" (*In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 299.)

3

reunification services. The paternal grandparents stated they were willing and able to help Father with A.R., who had lived with the grandparents for some time in their previous residence in Oregon. The Department determined that A.R. would be safe with Father, who was then in a position to care for A.K. with the support of his parents.

The Department determined that A.R. could not safely be returned to Mother, however. Mother remained under investigation by the Brookings Police Department for possible criminally negligent homicide.

The Department filed its first addendum to the disposition report, which attached the report of psychologist Dr. Mark Lamers concerning his evaluation of Mother. The Department subsequently filed a second addendum to the report, which attached Dr. Lamers's curriculum vitae (CV).

At the dispositional hearing on January 12, counsel for the Department stated it had changed its recommendation on custody, now recommending that the court grant Father sole physical and legal custody. Mother's counsel objected to the recommendation and asked to cross-examine Dr. Lamers. Dr. Lamers was then called to the stand, and Mother's counsel extensively questioned him on his qualifications, psychological evaluation of Mother, and report.

Following Dr. Lamers's testimony, the parties presented argument. Mother's counsel "ask[ed] that the first addendum be stricken from the record." Counsel argued, "It is the County's intention to submit this document [(Dr. Lamers's report)] with further family law files to be reviewed by other people, potentially in the state of Texas by the family court." Counsel went on to argue among other things that the report contained hearsay evidence, lacked "independent analysis," was not based on any "psychological testing" or a "significant clinical interview," and was based on

4

factual assumptions about Mother.  Counsel then requested that the court also strike from the record the second addendum to the disposition report, which attached Dr. Lamers's CV.  Counsel went on to "object to [Mother] not receiving joint legal custody" and to placing A.R. with Father.

The Department's counsel objected to Mother's request to strike Dr. Lamers's report and CV from the record.  Counsel argued the report provided "information that any Court should have if they're making a decision" concerning A.R. and that it was not "up to . . . us to determine what is relevant to the next Court that becomes involved with this family."

The court stated its "inclination is to grant" the request to strike Dr. Lamers's report and CV "inasmuch as the Court is not relying on [those documents]" or Dr. Lamers's testimony "to make its decision" as to disposition.

Mother's counsel reasserted her concern that the Department had "a specific desire . . . to forward this report to the family court in Texas."  The court, however, responded that the Department "can't do anything in the family court in Texas until this Court issues an order" on custody and until Father initiates a family law proceeding in Texas.

The Department's counsel then questioned whether there was any authority for the court to strike documents from the court file.  The court replied, "I'm not certain, either."  It thus directed the parties to submit briefing on "whether or not under what authority the Court could strike it." It reserved ruling on the request to strike pending a hearing, which it set for February 10.

The court then announced its dispositional findings and orders.  It adjudged A.R. a dependent of the court, found that the circumstances justified removal from Mother and that continuance in Mother's home was

contrary to A.R.'s welfare, granted Father sole legal and physical custody over A.R., and granted Mother supervised visitation.

On January 16, the court issued its written findings and orders consistent with its findings and orders made at the dispositional hearing.

On January 20, Mother filed a notice of appeal.

On January 26, the court issued its written order on custody, entered it as the final judgment, and terminated jurisdiction.

The hearing on Mother's request to strike came on as scheduled, on February 10. Mother's counsel told the court, "I have done research as well as consulted with a subject matter expert. Apparently . . . there is no law on this topic. And therefore, I have appealed the case hoping to create law that would allow for the striking of such a substandard psychological evaluation that could impact my client going forward."

The Department's counsel responded, "regarding the issue of a motion to strike, it was my understanding that counsel was going to present some type of argument in a motion format in writing and that I would be able to respond, and that that was to be due by this date. And what I'm hearing is that no motion has been filed, and I would object to any oral argument on this issue. And I don't have notice regarding it." Counsel continued, "And regarding the Court's ability to entertain or consider all evidence at the disposition, I would indicate that it is supported by WIC 358. And the best interest of the child deems that all information and evidence shall be considered by the Court when making orders regarding a child, and especially regarding the facts in this situation. Mother was not prejudiced by inconclusion [*sic*] of the psychological evaluation. She had a full opportunity to cross-examine Dr. Lamers and did so. The record is what it is."

The court then ruled as follows: "So, the Court did reserve the issue to

6

give counsel an opportunity to see if there was a legal basis to do so. It sounds like counsel hasn't been able to locate legal authority, so I'll deny the request to strike any of the reports."

On February 10, the court issued a minute order reflecting that ruling.

On February 20, Mother filed an amended notice of appeal indicating she was appealing from the denial of her request to strike in addition to the dispositional findings and orders.

## DISCUSSION

Mother's sole argument on appeal is that "The Juvenile Court Erred Not Using [*sic*] Its Inherent Authority to Strike the Improper Expert Report From the Juvenile Case File." Mother asserts the juvenile court "has the inherent authority to create a new form of procedure in a particular case, where justice demands it." (*In re Amber S.* (1993) 15 Cal.App.4th 1260, 1264, citing Cal. Const., art. VI, § 1.) And she maintains that "[u]sing its inherent authority over this matter, the juvenile court should have granted [her] motion to strike, and excluded the report from the juvenile case file, where it risks improperly prejudicing [her] in the future."

As a threshold matter, Mother acknowledges she did not raise this argument in the juvenile court. We conclude that Mother both forfeited her argument and invited any presumed error.

"[A]s a general rule, a party is precluded from urging on appeal any point not raised in the trial court." (*In re Riva M.* (1991) 235 Cal.App.3d 403, 411–412; accord, *In re S.B.* (2004) 32 Cal.4th 1287, 1293, superseded on other grounds as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 962–963; *In re Dakota S.* (2000) 85 Cal.App.4th 494, 502.) The forfeiture rule is based on fairness—" 'It is unfair to the trial judge and to the adverse party to take advantage of an alleged error on appeal where it could easily have been

7

corrected at trial.' " (*Cabrini Villas Homeowners Assn. v. Haghverdian* (2003) 111 Cal.App.4th 683, 693; accord, *Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1519 [" 'Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider.' "].)

Here, Mother concedes that below she did not raise any argument that the juvenile court had "inherent authority" to create any new procedures, including to remove allegedly "improper materials" from the juvenile case file. The court specifically asked Mother to provide legal authority in support of her request to strike the documents at issue from the case file and gave her an opportunity to do so by permitting her to file a brief on the issue and affording her a hearing. Mother did not submit any such brief, and at the hearing on her request to strike, failed to cite to any legal authority in support of the request. Mother thus has forfeited her ability to argue that the court had authority to strike the documents at issue and erred in not exercising that authority.

Mother, however, asks us to excuse the forfeiture on the ground that her claim is a "pure question of law which is presented by undisputed facts." (See *Hale v. Morgan* (1978) 22 Cal.3d 388, 394.) But that exception does not apply here. We agree, as Mother asserts, that whether a juvenile court has authority to strike documents from the juvenile case file presents a question of law. However, Mother is arguing not only that the court did have such authority, but also that it erred in not exercising that authority to strike the expert's report and CV from the case file. The resolution of the latter argument requires us to make factual determinations. Indeed, Mother relies on facts in the record to support that argument, such as, for example, when she attacks Dr. Lamers's report for containing hearsay evidence and lacking

adequate foundation due to among other things failing to conduct psychological testing of Mother.  Thus, Mother's claim on appeal does not present a pure question of law and is forfeited.

Not only did Mother forfeit her claim of error, but she also invited any presumed error.  " 'Under the doctrine of invited error, when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error.' " (*In re G.P.* (2014) 227 Cal.App.4th 1180, 1193.)  As noted, at the hearing on Mother's request to strike, her counsel asserted there was no legal authority for the court to strike the documents from the case file.  Indeed, counsel added that she "appealed the case hoping to create law that would allow for the striking of such a substandard psychological evaluation."  Mother cannot represent to the juvenile court there was no authority for it to strike the documents, but then later complain on appeal that the court did have such authority and erred in not exercising it in her favor.

Thus, Mother both forfeited her claim of error and invited any presumed error the court made in denying her request to strike.

Even if Mother did not do either of those things, we would still be unable to entertain her argument because it is not yet ripe for review.[4]

---

[4]    Although the parties did not assert or brief the issue of ripeness, we may consider that issue.  The parties need not be afforded an opportunity to present their views through supplemental briefing when the issue on appeal is inherent in the claim presented.  (*People v. Alice* (2007) 41 Cal.4th 668, 678–679 [interpreting requirements for supplemental briefing under Gov. Code, § 68081].)  The term "fairly included" is illustrated by *Save Laurel Way v. City of Redwood City* (2017) 14 Cal.App.5th 1005, in which our colleagues in Division One concluded that "[j]usticiability is present in every case" (*id.* at p. 1015, fn. 9), " '[t]he ripeness requirement[ ] [is] a branch of the doctrine of justiciability' " (*id.* at p. 1017), and the issue of ripeness was " 'fairly included' " within the appellant's argument that a planned development

"Ripeness is one facet of the prudential doctrine of justiciability. As a general rule, courts decide only justiciable controversies. ' "A controversy is 'ripe' when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made." ' " (*In re M.F.* (2022) 74 Cal.App.5th 86, 106, citing *Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573.) The ripeness doctrine is founded "on the recognition that judicial decisionmaking is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy." (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170.) Thus, " '[t]he ripeness requirement. . . "prevents courts from issuing purely advisory opinions, or considering a hypothetical state of facts in order to give general guidance rather than to resolve a specific legal dispute." ' " (*People v. Cooks* (2023) 89 Cal.App.5th 1124, 1127.) " 'This is particularly true where the complaining party will have the opportunity to pursue appropriate legal remedies should the anticipated harm ever materialize.' " (*Zolly v. City of Oakland* (2020) 47 Cal.App.5th 73, 91.)

Here, Mother's claim is an anticipatory attempt to challenge hypothetical injury or potential damage in the future. As she herself puts it, the "basis for seeking removal of Dr. Lamer's [*sic*] report and CV from the juvenile case file is an effort to avoid unnecessary prejudice mother *may* experience in attempting to have increased access to her child *in the future*." (Italics added.) Her concern, as her counsel argued at the dispositional

---

permit did not violate the Subdivision Map Act. (*Id.* at p. 1015, fn. 9 [denying request to submit supplemental briefs on the ripeness issue].) We reach the same conclusion as to Mother's argument here.

hearing, was the Department's alleged "intention to submit this document with further family law files to be reviewed by other people, potentially in the state of Texas by the family court." However, as the juvenile court explained, there is no indication in the record that Father has initiated any family law proceedings regarding A.R. in Texas, much less has sought to restrict or limit Mother's access to A.R. Nor is there any indication that the Department or A.R. has requested the release of the juvenile case file to any other court or third party.[5] Even if any, some, or all of these events is certain to occur, it is purely speculative for Mother to assume that a court presiding over a future family law case concerning A.R. will (a) admit the expert report and CV into evidence and (b) rely on those documents to issue rulings adverse to Mother. Even then, Mother would have a sufficient legal remedy—an appeal from any order or judgment following any rejection of Mother's objections to the report and CV by the hypothetical future family law court. In short, faced with only the *potential* for future error, we conclude Mother's claim is not ripe for appellate review.

## DISPOSITION

The order denying Mother's request to strike the expert's report and CV from the juvenile case file is affirmed.

---

[5] Which release, we add, must be obtained in accordance with statutory procedural requirements. (See Cal. Rules of Court, rule 5.552(a) ["a living child's juvenile dependency case files may be obtained or inspected, and information from the file may be disclosed, only in accordance with sections 827, 827.12, and 828"].)

_____

RICHMAN, J.

We concur.

_____

STEWART, P. J.

_____

MILLER, J.

(A175376N)